Good morning, Honorary. I'm John Pratt, representing New Balance. I'd like to say that all three of you have scored well. Keep your eye on the bar, don't try to open it. Thank you. I'd like to talk initially about the border. You granted the Rule 50 motion in favor of CCA and the state. This was on the theory that any excessive force must have been put on the scope of these employees' responsibility. This act says to be forfeited. We're trying to raise an issue on appeal. Actually, we responded when they made the Rule 50 motion. The argument that they made morally, the thrust of their oral motion, was that there was not enough evidence that the acts were done to serve the employer's interests. Their attorney argued, and this is in the February 13th transcript, page 97. It's not in the excerpt of things in the supplemental excerpts, but on page 97, they argued, so without evidence that they were authorized to perform these alleged acts by the employer and that it was done with the purpose to serve the employer, then they cannot be found to be within scope of their employment. So they were arguing about the evidence, and in response, we talked about the evidence. We talked about how Sandberg had been promoted after this, how Schneidengard, Schneider, and Korter received the opportunity to get these inmates and work for MSA, no problem, and other evidence. So we responded to what they made. Now, they also made a written motion, which was filed while the oral argument was going on. It was not undervited, but at the time, we were required to make our oral response. The trial judge then went at it from a little bit different angle. Instead of saying the evidence was not there, he said that as a matter of law, these acts in hitting inmates must have been beyond the scope of the authority, and he had made an assumption that revenge was the only purpose that the courts were trying to accomplish. Let me just get some help from you on something. Under Gonzalez v. Employee of the Chelsea and Arizona case, it's the state of the servant's mind which is material to help determine whether you can tie the employer to whatever acts the employee commits. In this case, at least the only one I could see is a guy named Ando. I don't know what you say if you say it incorrectly, but he was clearly a CCA employee. He let the valetier alleges that there was an assault and battery. However, when you put on your case, you didn't call the valet to inquire about his state of mind. One can argue that since the April 15 motion was granted, that you were deprived of an opportunity to cross-examine him if the other side put him on it, but wasn't the judge's primary focus, if you don't state it, but the reality was that there's just a complete failure of evidence about his state of mind. Am I missing something? Well, if you just look at the judge's words when he made the rule 50 motion, he said that as a matter of law, these alleged acts, seeking and maintaining retaliation, must be beyond the scope of the authority. Well, yeah, but let's just say we're going to put that to the side for the moment, and let's say the real focus was a simple lack of evidence. Do you agree that if there is no evidence in the record that Mr. Ando, like, state of mind, was presented that your case would fail as far as he is concerned in terms of bringing CCA into it? Well, perhaps, but we did have evidence. We did. The evidence does not have to come from the defense employees getting up on the stand. The evidence we had came from the inmates telling the jury, not a statement that had been made by the court and by the assistant court. No, no, no, thanks. Yovani did. Okay, I'm talking about Ando. He, at least from my perspective, speaking only for myself, it seems to be all the rest on the board. It's a purpose, sorry, all the doubt there, but Ando, like, was claimed, but there he claimed that, you know, he took him into his cell, he beat him, he pushed him down, told him if he said anything that he was going to get revenge of one kind or another. But there was nothing that I saw that talked about his state of mind that would tie CCA into it. Is there anything in the record that you can point me to that shows his state of mind? Bob, I want you to talk about that. I don't think so. Bob, what we have is plenty of statements by the court and the assistant court, which show, first, they wanted these statements, and second, they wanted their chiefs, inmates, and lawyers. So it was in the interest of the employer to get these statements and to exact some revenge. You're bringing up this kind of a conspiracy issue that you allege, and the integral participation, are you not? Is that what you're getting into? What I'm trying to say is that the jury was entitled to infer from these statements that were made and reported to the jury by the inmates that it was in the interest of the employer to get the statements, to get revenge, and they were entitled to infer that this was communicating to the guards that this had gotten through. And what do you rely upon for that? Well, look, Grego, the court has said you will be making new statements. I'm going to ask you for some case law. What I understood that the judge did was he said, look, I can't find any cases that allow you to say that by failure to intervene that you show integral participation. You've got to have an actual showing that they were all involved, and you didn't prove that, did you? It shows that they didn't do anything, and I think you're contending that that is enough to show that they were integrally involved in the participation. And I'm not sure your theory is an ideal. We're contending that some of these people are actually struggling inmates. Some of them are standing right there when inmates were struggling or struggling, and it's up to the jury to look into their mind and see what they're doing. Well, Judge, and you're right. The jury did say, with respect to everybody of them, except for one particular thing that didn't happen, right? They didn't believe it. No, no. We don't have any specific argument right now. I think there's a special argument. I have to say the fact that they found for the defendants is a way to say just at that point that they didn't believe it. We don't know that. We know that they didn't grant a verdict with the plaintiffs, right? Correct. We didn't point at that. It was just a way to attempt to affect it by various instructions. Let's put those aside for the moment. I just want to focus for a second on Adolick. If you can help me on this, maybe I should help you, but I don't see how you tied Adolick in there without some evidence as to what his state of mind was under Arizona law. You have said a minute ago that you agree that there is nothing in the record that tells you what that was. So I'm asking you, since that's the case, what can you refer me to? What case law, what facts in the case that can show me that you were deprived of a fair trial because you had no opportunity to delve into Adolick's state of mind? Can you show me anything like that? What I can show you is that given statements that were made by the court, it's just important to try to affirm that these desires were communicated to Adolick and the rest of the guards. Okay, so you're based on inference. Do you think that you were deprived of an opportunity to cross-examine him because of the Rule 50 ruling? If so, what difference does that make? Well, I could have put these people on the stage as part of my case. But you didn't when you had your case in shape, right? I did not choose to overdo it. Correct. So what I'm going to say is that you were deprived of the opportunity by the Rule 50 ruling. Okay. What's next? The other thing I would like to talk about is the Comfort's identification requirements. The parties are not in agreement as to exactly what the Comfort was ruling. Was the judge saying that we need evidence that a specific defendant assaulted a specific defendant, or was the judge open to the possibility that a guard could be liable for participation, short of actually assaulting an inmate? What evidence was there of participation? There's evidence of presence. But beyond that, what specific evidence is there for any given individual defendant? Well, for example, Sandberg is standing right behind Santos. When Santos is slammed onto the table, Santos can't tell us who exactly is standing. So he knows who didn't do it. He testifies that Sandberg didn't do it. He was standing there. He hasn't testified to it, did he? No, he doesn't know exactly who slammed him. How does that make somebody who's standing there liable? Because the jury is entitled to look into Sandberg's mind. Sandberg is identified. He's somebody that was there. We're not saying your presence is enough. You have to couple that with what was Sandberg thinking. Was he there supporting? What evidence was there of what Sandberg was thinking? Well, he assaulted other people. He slammed other inmates. Other people testified that he did. He and others. So the jury is entitled to infer these for the assaults. Is there any evidence as to who looked along those other heads? Yes, that the inmates were there. They testified that their heads were slammed. So was there testimony that Sandberg slammed any particular head? There was. You haven't cited that to us. What evidence was there? What plaintiff was the victim of Sandberg based on some evidence? I'm sorry, I can't remember. I'm saying plaintiff. As I struggle through here, I confess I was frustrated. It was the opening brief to all generalities, but not anything with regard to specific evidence. And the answering brief says, hey, wait a minute, that's supposed to be said in the opening brief. It's also supposed to be said to the district court. We're not going to have a chance to respond to something said in the reply brief. I get the reply brief, and basically there's one episode, which is the one Judge Smith has been asking about that's identified, and I still don't know what the evidence is with regard to anybody else. And it's not my job to go through and find out what case could have been made. So I'm asking you now what evidence. And you're giving me the same kind of generalities. The trial judge ruled on the motion as a matter of law. He said that you're going to have to identify exactly who you do. And so he ruled it's not a matter of law, and we did. We're checking his exaggerated identification requirement. And we're saying that if you're standing right next to somebody whose head is being slammed, you are a participant. We don't really need a conspiracy theory. You're a participant. The jury's entitled to determine that the stander is standing there while someone's head is being slammed. The stander is for this. Now, he's reiterating an act. If he thinks it's necessary, he's not going to try to disquiet him. He's letting this happen. That's just back to the issue that we talked about a minute ago, which is that, just that I don't know case law that indicates that a failure to intervene is the same as consenting to the action. Is there any case you can cite us to that the judge was very clear about in this that this integral participation can't be established by a failure to intervene? Have you found any case law since you've had that discussion that would change our view on that? Well, yes, there are parties, Johnson v. Duffy and Rutherford v. Berger case. We cited these cases. That doesn't stand for the proposition. Those that will stand for the proposition that integral participation can be established by failure to intervene, does it? Where are those cases? What can you cite? What language then undersays your contention here? I don't see it. Well, I think what you're saying is you don't have to actually strike a blow, which is what we see that Johnson said, that integral participation is certainly a commander. Somebody who gives an order to go beat those guys up is going to be allowed without striking the blows. What we have here is somebody who's in the neighborhood, maybe even cheering them on. But the evidence of that is pretty obscure, too. So we ask you for evidence. So far, all I have is that Sandberg was standing there and may have been involved with other people, but we haven't identified specific evidence. What are the people? So is there any case law that says being there in that context is enough? Well, I think so. Those three cases that you cited, correct, Rutherford, they're saying that while your presence is not enough, the jury's entitlement for their supporting this stuff, and I'd like the jury abilities to do this, to identify some of these people. Okay. We appreciate your argument, Ken, so we've let you go. It's our fault, in part, because we ask you a lot of questions. That's our job. So let's hear from the jury. Good morning. I'm Nicholas Zito. I'm arguing this morning on behalf of the employees. If the court has any correct understanding of what the law is, with respect to both course and scope in Arizona, and also integral participation in all kinds of case, Judge Smith, you're concerned about the Ondulich instance. Mr. Rafferty just told you that there is no evidence regarding his standpoint, and that he had every opportunity to both call CO Ondulich and or prosecute him in any forgotten form. And given that fact, does his eighth amendment claim fail? Both course and scope. I think you raised this in the context of the course and scope, which is similar to, I mean, it carries over the integral participation argument as well. Why is it the plaintiff's obligation to let the defendant talk about what his state of mind was? That's certainly relevant evidence. But the jury can decide something. I say what I was thinking, but the jury can decide something else based upon what other evidence there was of my behavior and statements to others. So how is it that we can conclude, or the district court can conclude as a matter of law, that the state of mind did not permit liability on the part of the employer? Well, first and foremost, it's the plaintiff's burden. And they have the burden of evidence. They have the burden of proof. And Rule 50 allows that. Yeah, but usually when an employer does something, I mean, you've got a truck driver who goes over the speed limit, it's not likely the company is going to be able to beat the rap by saying, well, he wasn't supposed to go over the speed limit. Security, prison guards, security officers, corrections officers, whatever they're called in this facility, are expected to maintain order. And if they go over the line in maintaining order, it's not a big jump to say, yeah, but they were still doing it, not because they hated the individuals who were beating up, but because they perceived that as part of what they were supposed to do as their job. And I don't need to hear from the particular guard's state of mind or need to hear from him as to his state of mind to have the ability to infer that. You know, they were corrections officers. They were serving the facility. So, okay, that's something that wasn't a throw in if they do it. Well, that effort has to be based on evidence, Your Honor. And, again, they had the burden of proof of every element of their claim, including evidence that Ms. Andulich, CEO Andulich, was acting with purpose to serve as an employer. Well, you're suggesting that evidence did come only from his mouth, and if he says, no, I wasn't doing it to serve the employer, that's enough. Why is that mandated? Why can't you make that inference based on the other evidence that was submitted? It's not mandated. You don't have to get that evidence directly from his mouth. But there has to be some evidence. There has to be some evidence that there was this purpose to serve the employer. Their entire theory of the case was that it was purely personal, to exact revenge for the attack on their brothers. It's not really intention to serve the employer, is it? Well, they're trying to maintain authority over the prisoners. Well, who's the boss here? I'm the boss. I'm the boss because I'm the guard, and you're the inmate. So you've got to do what I tell you to do. That's not in conflict with CCA's motivations. That's exactly correct. Well, that's not how CCA runs their facilities. That's not how corrections officers in CCA facilities operate. They don't go around asserting their authority by assaulting and or violating constitutional rights. In particular in this case, there is no evidence of that. We see these cases all the time in the context of just corrections officers or police officers. And when they go over the line, it's the very rare case where the municipality is able to say, well, that's not what we want our officers to do. The reality is that the interests run mostly paramount, and so to find as a matter of law that CCA couldn't apply more for what the correction officer did, based on what evidence was there that would prevent the jury from making the inference that it was in CCA's interest. There are three elements here. So I need to establish, of course, and still complain. The servant had to enact the conduct that was of the kind the employees employed to perform inter-association duty within the authorized time and space limit, and there had to have been this purpose to serve. Everything that you've stated so far just looked at as that, and it touches on the first two elements that they were performing. The conduct was of the same kind, and that was in the same time and place. I agree with that. They were in the facility conducting investigation. And so everything you just said would seemingly satisfy those two elements. I agree. The only thing I see that was inconsistent with CCA's desires is that it got CCA involved in the law system. It's not otherwise inconsistent with what CCA wants to do than maintaining control over the prisoners. I disagree with that. Tell me what's the basis for the disagreement. What evidence is there to the contrary that jury claimed to have concluded that that's not the standard? They have to provide evidence that they were motivated by a purpose. You've got a big running start already for the reasons I've already said, and you've acknowledged it in the first two categories. I've checked off some of those boxes. The third category is not a big jump. Well, it is a big jump. But tell me why it wasn't sure it couldn't conclude. The purpose wasn't at least in part to serve the interests of the master plan. Everything you've talked about so far, Your Honor, is based on an assumption, an inference. But there has to be evidence. An inference is evidence. An inference has to be based. An inference has to be reasonable, and it also has to be based. I've got to tell you, based on the evidence I've seen, I don't think it's a big jump. So I'm waiting to hear from you why a jury could not logically have concluded that the interests of the employer were being served at least in part, just based on the evidence that's on the table in this discussion. It's hard for me to answer that because I don't see the evidence. What I see is everything. I see a jury reaching a conclusion, or at least reasonably reaching a conclusion that finds it as advocated. Well, I'd encourage you to go back and look at Section 235 of the Restatement, and that is the section that talks about what it means to have to act for the purpose of serving the employer. And they give very specific examples as to when an employee is not serving an employee, an employer. And I think that those examples are very illustrative. Okay, so you've got a train operator who employs the employee to kick off trespassers on the train. The employee goes up and down the cars and takes bribes. I'll let you stay if you pay me a bribe. One passenger who was not a trespasser but was a paying customer refuses to pay the bribe, and the employee kicks him off. Any evidence here that, do you want to name a straight male, that Butler wasn't being paid off by Honolulu, or that Butler was collecting bribes? There's two evidence. Okay, so how exact is this illustration to? Well, I think it shows that it has to be a pretty egregious conduct, a break from your day-to-day activities, and in this case assaulting inmates to assert authority over them. When I say assault, I'm not talking about using force, lawful force, necessary force, force necessary to maintain discipline and order. What the allegations are is that there was no basis for force, that these were assaults, that these were purely personal, simply to pay them back. To pay them back for what they did to money has nothing to do with maintaining order or discipline. And who they called were simply their own just plaintiffs, and one CO, and that was it. Nothing prevented them to go beyond that. We could keep talking about this, but I want to point out that this all only goes to the course and scope argument, and if the court affirms all of the verdicts, which there's no verdict basis to vacate the verdicts, and affirms Rule 50 ruling, this is a point. Let me explore that, because my colleague has suggested his concerns about this third element, which, of course, is the very same thing, as you know, that I've been wrestling with. I read the conduct here to be pretty egregious. Illegalized conduct, I should say. And I asked your opposing colleague whether the fact that no evidence was put on a non-delict state of mind was basically fated to that. My impression is he certainly indicated there was no evidence one way or another. I got the impression he thought that probably was fatal. My colleague feels that the jury can infer that, if you say it has to be based on evidence, according to your understanding of Arizona law, what kind of evidence is necessary to prove the third wrong. If it can be inferred by the jury, is what evidence would the jury rely upon to infer the third wrong? Let me start by pointing out to the Smith case, because he just said that these were pretty outrageous acts. Allegations. And in that Smith case, the court said that employees acting outside the scope of his employment, if he acts in an outrageous manner, will inflict punishment out of all proportion to the necessities of the employer's business. So I think that is one way to show that the employee was not actually committed with the purpose to serve the employer, is to show that it wasn't necessarily outrageous. It might have been on the fringe. But here, these are pretty outrageous allegations. These are clientees assaulting inmates for no reason. And so I think the question is, of course, it has to do with their calling, but that doesn't mean it's a legitimate reason. But what I'm struggling with is, what can you say the jury could not rely upon, as was in your case, to infer that the third prong is satisfied? I suppose there could be evidence from any one of these individuals, whether they made statements to other inmates or statements to other COs that were overheard about, you know, this is how we do things around here, that sort of thing. There was no such thing. Not that I've seen, no. Not that I've seen. Could I ask a question? I know you've been focusing on the Arizona law, but I'd like to have you just tell me whether it's applicable or not, and if so, what's your response? You paid less to the DNR case. In our court, where we said that a supervisor is liable for a constitution of violations, if the subordinates of his subordinates, if the supervisor participated, or his directors, violations. And that would seem to be what the district court was focusing on. But there's another clause in Taylor that says, or knew the violation and failed an act to prevent it. Is that part of Taylor applicable? And if so, how do you reply to this case? It's not applicable for two reasons. One, that's a principle of supervisory liability, and that was not a claim. That was a reason to complain, or an issue at all in this case. Two, again, in Plaintiff's case, Chief, they did not present any evidence that any of these individuals were acting in a supervisory role, and or gave an order to commit any of these acts. So that's why I think Taylor, and the cases that followed that, the supervisory liability cases, don't apply to this case, have no application to this case. I know Plaintiffs keep trying to pull that in. But without a claim for evidence in this case, it simply does not apply. Were you ever restricted by Arizona law on this issue? On the assault and battery, yes. Whether or not there was a concerted action theory in 12-2506, yes, that's strictly governed by Arizona law. It's only when you get into account one, which is section 183, excessive force claims, that's when we flip over to federal law and personal participation, which is sort of an element of the State Actual Requirement of 1983, and whether or not the individual directly participated or wasn't digitally participated in the conduct. Okay. Now, I understand that now. One Arizona case followed. One Arizona case, which I rely primarily for your position in this regard. We've cited two cases, Armory Smith v. American Express Travel-Related Services and Love v. Liberty Mutual Insurance Company. Those are two cases that apply to third prong of the course of scope. And I would also urge the Court to go back and look at section 235 of the Reference Statement of Agency. That gives very good illustrations as to what types of conduct crosses the line and is not more than a purpose to serve the employer. So other than the Court's determent that that part of the restatement is Arizona law? Yes. And you've got a case you've briefed on that? Yes. Love v. Liberty Mutual 760, specific section 285. Thank you. I have nothing further unless you have any questions. Thank you. Thank you, Counsel. Counsel, you used up your time, but we'll give you a minute to have a brief rebuttal if you're ready. Okay. I don't think Taylor is limited to the situation, because co-employees can also assist another employee in doing something. And as far as Modular Street, we do have some evidence. I replied briefly. The father testified that Modular said that if Modular stands, Modular said, and instead of you saying to me, I've got this mortgage or family, and Modular said, you are going to write a statement. So this piece of evidence also goes to serving the interests of the employer. The employer wanted statements. So I quoted the inmates. This is Stewart Craig on the board himself. He said, you're going to write, you're going to make your right. That was one of the employer's interests. The other employer's interest is to teach these inmates a lesson. Revenge can be part of the employer's interest, and we have evidence that that's what the board wanted. Some of this is catalogued in the floor in our opening brief. All right. Thank you, counsel. Thank you all for your argument. We appreciate it. The case is dragging us a bit. And the court stands at recess for the minute.
judges: Wallace, Clifton, M. Smith